John R. Drake, Appellant, v. The New York Iron Mine and Others, Respondents.

*What does not constitute an equitable assignment of dividends of a corporation — effect of the absence of evidence in a case on appeal.*

In the year 1877 all the stock of a corporation known as the New York Iron Mine, save a few shares, was owned by Messrs. Tilden and Wetmore. In April and May of that year Wetmore, being in Michigan, made three promissory notes for $5,000 each, in the name of the New York Iron Mine, and procured them to be discounted by a bank. Wetmore, who had no authority to make any of these notes, made them intending when there should be a dividend of the New York Iron Mine, to pay these notes out of the share of the profits then coming to him as a stockholder of the corporation. This intention, however, he did not divulge to any one. When that dividend came to be made, Tilden insisted on the application of Wetmore's share to the payment of other claims. The notes were dishonored, and in July, 1877, Wetmore went into bankruptcy. After filing his petition in bankruptcy he made entries in the books of the New York Iron Mine, kept by himself in Michigan, charging the notes against himself as a debt due from him to said corporation.

The bank which discounted the notes was informed that the notes were made without authority, but it never regarded Wetmore as its individual debtor by reason of his having made the notes.

In an action brought by the owner, through successive transfers, of the notes given to said bank, to reach certain dividends of the New York Iron Mine, declared in 1889, in which the estate of Wetmore was entitled to share,

*Held*, that no equitable assignment or implied trust was created by Wetmore in favor of the bank; that the action of Wetmore in charging the notes against himself on the books of the New York Iron Mine in Michigan, had no effect

as to the bank, though it might be deemed an acknowledgment on his part that as between himself and the New York Iron Mine, the notes were to be treated as his individual obligations, and that the complaint was properly dismissed.

Where a case on appeal contains no evidence, the findings of the trial judge, in relation to the facts, are to be taken as true, and the sole question before the court on appeal is whether the facts so found are sufficient to sustain the conclusions of law reached by the trial judge.

APPEAL by the plaintiff, John R. Drake, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Queens on the 20th day of October, 1894, upon the decision of the court after a trial at the Queens County Special Term dismissing the complaint upon the merits.

*Roger M. Sherman,* for the appellant.

*Frank E. Smith,* for the respondents.

DYKMAN, J.:

This case comes to us upon the judgment record alone without a case. The object of the action is to establish and enforce an equitable assignment of or lien upon a certain fund, and the complaint was dismissed after a trial before a judge without a jury.

In the absence of a case containing the evidence the findings of the trial judge in relation to the facts are to be taken as true, and the sole question before us is whether those facts so found in this case are sufficient to sustain the conclusions of law reached by the trial judge.

The findings are lengthy and the facts are numerous. Their recitation here would be unprofitable because they justify but one conclusion. They are entirely insufficient to support the claim of the plaintiff.

The trial judge dealt with the case in a very satisfactory opinion, and we find it unnecessary to add anything to what is said therein.

The judgment should be affirmed, with costs, upon the opinion of the trial judge.

BROWN, P. J., and PRATT, J., concurred.

Judgment affirmed, with costs, on opinion of Judge BARTLETT, at Special Term.

The opinion of Judge BARTLETT was as follows:

BARTLETT, J.:

The transactions which are the subject of the controversy in this suit grow out of the relations of the late Samuel J. Tilden and of the defendant William L. Wetmore, to a corporation organized under the laws of Michigan, and doing business in that State, and in the State of New York, under the name of the New York Iron Mine.

In the year 1877 all the stock of the New York Iron Mine, save a few shares, which were necessary to enable persons to act as directors, was owned by Messrs. Tilden and Wetmore, Mr. Tilden owning a controlling interest. In April and May of that year Wetmore, being in Michigan, made three promissory notes for $5,000 each in the name of the New York Iron Mine, and procured them to be discounted by the First National Bank of Negaunee. Wetmore had no authority either to make or deliver any of these notes. His intention was, when there should next be a dividend by the New York Iron Mine, to pay these notes out of the share of the profits then coming to himself as a stockholder in the corporation. This intention, however, he did not divulge to any one. When that dividend came to be made, Tilden insisted on the application of Wetmore's share to the payment of other claims. The notes were dishonored, and in July, 1877, Wetmore went into bankruptcy. After the filing of his petition he made entries in the books of the defendant corporation kept by himself in Michigan, charging the notes as against himself as a debt due from him to the New York Iron Mine.

The present plaintiff sues as the owner, through successive transfers, of the three notes in question, and as also owning all liens and assignments pertaining to them. His purpose is to reach certain dividends of the New York Iron Mine, in which the estate of Wetmore was entitled to share, which were declared in 1889.

The theory of the case in his behalf, as I understand it, is that Wetmore made an equitable assignment to the First National Bank of Negaunee of all dividends which might thereafter be declared on his stock in the New York Iron Mine, or that he created an implied trust, whereby such dividends were made applicable to the payment of these notes.

Unless the plaintiff can establish such an equitable assignment or implied trust, he must fail in the action.

It is to be noted that the Negaunee Bank never entertained the idea of any assignment or trust whatever. Its officers were informed that the notes were made without authority; but, nevertheless, the bank sued the New York Iron Mine upon them.

If Wetmore ever intended to make any equitable assignment or constitute any trust, it is tolerably plain that the bank at this time did not know it.

But the evidence fails to disclose anything which amounts to an equitable assignment. What Wetmore meant to do was to pay these notes, which he had issued wrongfully, out of the dividends which he should thereafter receive from the New York Iron Mine, but he never meant at any time to transfer to the Negaunee Bank any right to those dividends as such.

The bank never regarded him as its individual debtor by reason of his having made the notes; and I do not see how it can be held that its officers accepted an assignment of a fund to pay a debt which it did not suppose existed as an individual obligation of Wetmore.

Wetmore declares that he did not think that he was making the Negaunee Bank his creditor; and that when he found that he had to go into bankruptcy, he wished the bank to share with all his other creditors, and did not want to give it any preference. His acts, as proved, do not contradict his intent as thus stated. An intention to make an equitable assignment cannot be inferred from signing the notes in the name of the New York Iron Mine, and procuring them to be discounted without any authority on his part so to do. The notes contained nothing, nor were they accompanied by any instrument, indicating a desire or direction for payment out of a particular fund. Wetmore did nothing at any time which put the dividends out of his dominion or control and put them under the dominion or control of the Negaunee Bank. His action in charging the notes against himself on the books of the New York Iron Mine in Michigan had no effect as to the bank, though it may be deemed an acknowledgment on his part that, as between himself and the New York Iron Mine, the notes were to be treated as his individual obligations. It is argued that these entries are evidence of a prior assignment, and amounted to a lawful declaration of trust; but it

would be going very far, I think, to hold that this was evidence of a prior assignment in the face of Wetmore's declaration to the effect that he did not intend to make any, and in view of the fact that the bank had no knowledge or expectation of such an assignment.

On the subject of implied trusts, Mr. Perry, in his well-known treatise, says: "Any agreement or contract in writing made by a person having the power of disposal over property, whereby such person agrees or directs that a particular parcel of property or a certain fund shall be held or dealt with in a particular manner, for the benefit of another, in a court of equity raises a trust in favor of such other person against the person making such agreement, or any other person claiming under him voluntarily or with notice." (Perry on Trusts, § 82.)

But here there is nothing to show that the entries made by Wetmore gave any direction whatever for the payment of his future dividends to the Negaunee Bank or to anybody else.

My conclusion, as matter of fact, that the proof does not establish an equitable assignment or implied trust, renders it unnecessary to determine the other interesting questions discussed by counsel in their briefs.

There must be judgment for defendants with costs.